IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PARIS DAVIS,

                Plaintiff,                OPINION AND ORDER

v.

                                        22-cv-203-wmc

DR. JAMES MURPHY and
HEALTH SERVICES MANAGER JAIME ADAMS,

                Defendant.

Representing himself, plaintiff Paris Davis filed a complaint under 42 U.S.C. § 1983, claiming that defendants Dr. James Murphy and Health Services Manager ("HSM") Jaime Adams denied him adequate medical care for shoulder pain while he was incarcerated by the Wisconsin Department of Corrections ("DOC"). (Dkt. #1.) Davis was granted leave to proceed with Eighth Amendment claims against both defendants. (Dkt. #11.) The defendants have each filed a motion for summary judgment. (Dkt. #42, #47.) For the reasons explained below, these motions will now be granted.

UNDISPUTED FACTS[1]

Davis is currently incarcerated at Columbia Correctional Institution. At all times relevant to the complaint, however, Davis was incarcerated at the Wisconsin Secure

---

[1] Unless otherwise noted, the following facts are undisputed as drawn from the parties' proposed findings of fact, as well as the offered evidence in support. In particular, to the extent that plaintiff did not dispute or respond, the defendants' proposed findings of fact are deemed undisputed to the extent supported by evidence in the record, albeit viewed in the light most favorable to plaintiff as non-movant. *See* W.D. Wis. Proc. to be Followed on Mot. For Summ. Judg., § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed findings of fact with proper citation); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("a failure to respond by the nonmovant as mandated by the local rules results in an admission").

Program Facility ("WSPF"), where HSM Adams was employed, while Dr. Murphy provided care to inmates under a contract with the DOC from July through September 2021. As the HSM, Adams provided administrative support and direction for the WSPF Health Services Unit ("HSU") and supervised the nursing staff. However, she did not provide direct treatment to inmates, nor did she supervise the physicians or other advanced care providers ("ACPs").

On January 4, 2021, Davis complained of right shoulder pain after sleeping on it wrong. He was initially placed on a waiting list for a transcutaneous electrical nerve stimulation ("TENS") unit and given orders for ibuprofen and ice. Three days later, on January 7, 2021, Davis was seen by a non-defendant, Dr. Gross, for knee pain. During that appointment, Davis again complained of right shoulder pain after sleeping on it wrong. Davis, who was already taking gabapentin for pain, was then scheduled to see a physical therapist for both his knee and shoulder issues.

Beginning on January 14, 2021, Davis began physical therapy. Recommended to attend one physical therapy session per week for 12 to 16 weeks, Davis was also given exercises to do on his own time 2 to 4 times per week.

On February 5, 2021, Davis saw Dr. Gross again, still complaining of ongoing right shoulder pain. While Davis asked for a shoulder x-ray at that point, Dr. Gross recommended waiting until he completed his physical therapy regimen.

On May 11, 2021, Davis was discharged from physical therapy. During his final visit, he reported that using his TENS unit reduced his shoulder pain and that he had been compliant in performing his exercise program. However, his internal rotation was limited

on examination, and he continued to complain of pain. The following day, Davis was seen by an ACP, who ordered an MRI and consultation with an orthopedic specialist.

On June 30, 2021, Davis had an MRI of his right shoulder without contrast at Gundersen Boscobel Hospital. Thereafter, Davis was referred to Dr. Murphy to discuss the results. Although not an orthopedic specialist, Dr. Murphy saw Davis for the first time on July 14, 2021. The results of the MRI showed some chondrosis or osteoarthritis of the glenoid, which is the connective tissue between the ball and socket of the shoulder. The MRI also showed some tendinosis of the biceps and infraspinatus tendons, which is a degeneration of the tendons in response to chronic overuse, such as repetitive motions. In addition, the MRI showed a foreign "loose body" in the shoulder joint. A loose body is a small piece of bone or cartilage that has broken off the shoulder and is floating around in the joint.

Common treatment options for chondrosis include rest, cold or heat packs, pain medications, and physical therapy or strengthening exercises. Similarly, common treatment options for tendinosis include rest, ice, pain medications, and physical therapy, while common treatment options for a loose body also include rest, ice, compression, elevation, non-steroidal anti-inflammatory medications, immobilizations, and physical therapy. If conservative treatment options fail to alleviate symptoms, surgery to remove the loose body may be appropriate.

During his visit with Davis on July 14, 2021, Dr. Murphy also noted that: he had been having right shoulder pain for several months; the pain worsened when he extended his right elbow and internally rotated his right arm; and he worked in the laundry, where

he frequently performed repetitive motions. Dr. Murphy also examined Davis himself, finding that he had a normal range of motion with no swelling, redness, muscle pain, or stiffness. After reviewing the past treatment Davis had received, including acetaminophen, ibuprofen, physical therapy, a TENS unit, and gabapentin, Dr. Murphy further determined that Davis may be a candidate for surgical intervention to remove the loose body from his shoulder joint, but that a referral to see an orthopedic surgeon would likely be the best treatment option to address his ongoing complaints of shoulder pain. Finally, noting that Davis already had an appointment with an offsite orthopedic provider at the end of the month, Dr. Murphy ordered Davis to rest his shoulder by avoiding any repetitive motions that would aggravate it; in the meantime, he also prescribed a 5-day course of prednisone to address Davis's complaints of pain and reduce inflammation.

On July 31, 2021, Davis saw an orthopedic surgeon, Dr. Riley, at the Gundersen Boscobel Hospital. Dr. Riley reviewed the right shoulder MRI, which showed two loose bodies in the subscapular recess of Davis's shoulder, then told Davis that he had two options for treatment: (1) live with them; or (2) have them surgically removed. Davis also indicated that he would like them removed, and Dr. Riley agreed that surgery would likely help alleviate his symptoms.

On September 7, 2021, Dr. Murphy saw Davis for a second and final time. During that appointment, Davis indicated that he was expecting to have arthroscopic orthopedic surgery to remove the loose bodies from his right shoulder. When Dr. Murphy again examined Davis's shoulder, he found tenderness to palpation and decreased range of motion, but no muscle pain, swelling, stiffness, or numbness. Dr. Murphy increased

Davis's gabapentin prescription to address his complaints of pain until he could have surgery, in addition to the acetaminophen and ibuprofen that he was already taking for pain. Dr. Murphy also referred Davis back to Dr. Riley for surgical removal of the loose bodies in his shoulder.

Davis's right shoulder surgery was initially scheduled for November 19, 2021, but that surgery was postponed by the Gundersen Boscobel Surgical Department after the surgeon advised that he needed additional information about Davis's heart. Davis was subsequently cleared for surgery on January 11, 2022. Dr. Riley performed surgery on Davis's right shoulder at Gundersen Boscobel Hospital on February 4, 2022.

OPINION

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that someone deprived him of a right secured by the Constitution or the laws of the United States, *and* that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Here, plaintiff alleges that defendants violated his rights under the Eighth Amendment by failing or refusing to provide him with adequate pain medication or other treatment despite knowing that the results of his MRI showed loose bodies in his right shoulder. Both defendants have moved for summary judgment, arguing that plaintiff has no evidence showing that they violated his rights. Defendant Adams also argues that she is entitled to qualified immunity.

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (alteration adopted and quotation marks omitted). At summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017).

Although pro se litigants are entitled to liberal construction of their pleadings, they, too, have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *See Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.") (citation omitted). Further, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

## I. Claims Under the Eighth Amendment

The Eighth Amendment gives prisoners the right to receive adequate medical care, and it is well established that "deliberate indifference to serious medical needs of prisoners

constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation marks and citation omitted). To prevail on a claim of constitutionally inadequate medical care, therefore, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent to the risks presented by that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett*, 658 F.3d, at 750.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it, which is a decidedly high standard. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Specifically, acts of deliberate indifference require more than negligence, or even gross negligence, but require something less than purposeful acts. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994). The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; or (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837. Defendants do not dispute that plaintiff's shoulder pain was an objectively serious medical need, but argue that there is no evidence that either defendant acted with deliberate indifference to that need. Accordingly, the court will address the evidence against each defendant.

### A. Dr. Murphy

As for Dr. Murphy, defendants argue that plaintiff has no evidence establishing that he acted with deliberate indifference, having provided him with medical care on both occasions that he saw him. Specifically, when Dr. Murphy first saw Davis on July 14, 2021, he discussed the results of the MRI and advised Davis that he may be a candidate for surgery to remove the loose bodies that were in his shoulder joint. Noting that Davis already had an appointment with an offsite orthopedic surgeon at the end of the month, Dr. Murphy also prescribed new medication – a 5-day course of prednisone – and instructed him to rest his shoulder to avoid aggravating it. (Murphy Decl. (dkt. #44) ¶¶ 21-23; Ex. A (dkt. #44-1), at 14-19.) Plaintiff then met with the orthopedic surgeon just two weeks later on July 31, 2021, and elected to have shoulder surgery. (Ex. A (dkt. #44-1), at 20-21.)

Dr. Murphy treated plaintiff for a second and final time on September 7, 2021, when plaintiff was expecting to have arthroscopic shoulder surgery. (Murphy Decl. (dkt. #44) ¶ 28; Ex. A (dkt. #44-1), at 22.) Until he could have surgery, therefore, Dr. Murphy increased plaintiff's gabapentin prescription to address his complaints of pain. (Murphy Decl. (dkt. #44) ¶ 31; Ex. A (dkt. #44-1), at 24.) Dr. Murphy then referred plaintiff back to the orthopedic specialist (Dr. Riley) for surgical removal of the loose bodies in his shoulder. (*Id.*)

Dr. Murphy's decision to provide pain relief measures to plaintiff while he awaited a scheduled consultation with an orthopedic surgeon in July 2021 reflects the exercise of professional judgment, not conduct from which a reasonable jury could find deliberate

8

indifference. *See Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). Similarly, Dr. Murphy's decision to increase plaintiff's gabapentin while he was awaiting surgery is woefully insufficient to show that he was acting with deliberate indifference to plaintiff's needs. *Id*.

Further, plaintiff has presented *no* evidence that Dr. Murphy knowingly persisted in a course of ineffective treatment. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Nor does plaintiff otherwise present any evidence from which a reasonable jury could conclude that Dr. Murphy's treatment decisions were: (1) "so blatantly inappropriate as to evidence intentional mistreatment," *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); or (2) "such a substantial departure from accepted professional judgment, practice, or standards," as to support a constitutional claim. *Brown v. Osmundson*, 38 F.4th 545, 551 (7th Cir. 2022) (citations omitted).

As a result, Dr. Murphy's treatment decisions based on the exercise of medical judgment are entitled to deference and do not constitute deliberate indifference as a matter of law. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021); *see also Snipes*, 95 F.3d at 591 ("Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' *Estelle*, 429 U.S. at 107, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview."). Because no reasonable jury could conclude that Dr. Murphy was deliberately indifferent to plaintiff's

complaints of pain, he is entitled to summary judgment on plaintiff's Eighth Amendment claims against him.

### B. HSM Adams

Defendant HSM Adams argues that plaintiff cannot establish that she acted with deliberate indifference to a serious medical need as well. First, as the HSM serving in an administrative or supervisory role, the court agrees that she was not responsible for treating any inmate, including plaintiff; indeed, she had *no* authority to prescribe medications or other treatments that could only be authorized by ACPs. (Adams Decl. (dkt. #50) ¶¶ 9-12.) To be held liable under § 1983, a plaintiff must prove the defendant's personal participation or direct responsibility for the alleged constitutional deprivation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). If the defendant lacked authority to provide the care requested, she cannot be held liable for violating the plaintiff's rights. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.").

Since plaintiff does not dispute that he was under the care of ACPs while at WSPF, as well as the off-site orthopedic specialist, and that those ACPs were responsible for his plan of care, plaintiff presents no evidence from which a reasonable jury could conclude that defendant Adams was personally involved in providing medical treatment or that she had *any* authority over the treatment he was prescribed. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *see also Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (holding that a health services manager was not liable where she had no authority

10

to intervene in treatment prescribed by a doctor); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) ("[N]urses may generally defer to instructions given by physicians," unless "it is apparent that the physician's order will likely harm the patient."). Moreover, although defendant held an administrative and supervisory role in the HSU, plaintiff cannot hold her vicariously liable for the actions of his treatment providers or insist that she perform the jobs of others. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job"). Because no reasonable jury could find that defendant Adams acted with deliberate indifference to plaintiff's medical needs by failing or refusing to change his medication when she had no authority to do so, plaintiff does not establish a constitutional violation of the Eighth Amendment and defendant is entitled to summary judgment on plaintiff's claim against her.

## II. Qualified Immunity

Additionally, defendant Adams asserts entitlement to qualified immunity. (Dkt. #48, at 6-7.) Qualified immunity protects government officials from liability for damages unless they clearly violate statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense is raised, a plaintiff also bears the burden of defeating it. *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023). Plaintiff has not come forward with law or evidence showing that defendant Adams violated his clearly established constitutional rights in denying him additional care. Accordingly, the court concludes that defendant Adams is also entitled to qualified immunity and her motion for summary judgment will be granted for this additional reason.

ORDER

IT IS ORDERED that:

1) The motions for summary judgment filed by defendants Dr. James Murphy (dkt. #42) and Jaime Adams (dkt. #47) are GRANTED.

2) The clerk of court is directed enter judgment in favor of the defendant and to close this case.

Entered this 17th day of February, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge